JACOBSEN et al. v. DALLES, P. & A. NAV. CO.

(District Court, D. Oregon. January 3, 1901.)

No. 4,432.

1. COLLISION—CREDIBILITY OF WITNESSES.
The fact that the testimony of witnesses to a collision was manifestly incorrect as to certain matters of estimate or judgment, such as the distance between the vessels at a particular time, the length of time during which one of them kept a certain course, or the distance traversed on such course, does not impeach their veracity, and is not sufficient to discredit their testimony as to other facts which were obvious, and about which they could not be mistaken.

2. SAME—EFFECT OF MISSTATEMENT IN PLEADING.
A statement in the answer of a steamer to a libel for collision with a sailboat that the boat changed her course when "some one hundred feet" off the steamer's bow, is not of such an absolute fact as to preclude the steamer from showing that in fact the sailboat changed her course, and attempted to cross ahead of the steamer, and that the collision was due to such fact, although, if the vessels had been in the positions and at the distance stated when the change was made, collision would have been impossible, having regard to the relative speed of the two vessels as shown by the evidence.

3. SAME—STEAMER AND SAILBOAT.
The evidence showed that libelant was in a small sailboat, sailing in the same direction as the steamer. The evidence of libelant was that he continued his course until struck and sunk by the overtaking vessel. A passenger with him testified practically to the same fact, though his testimony was impeached by evidence of contradictory declarations. Testimony of persons on board the steamer was all to the effect that, just before they overtook the sailboat, libelant changed the course of the same so as to go directly in front of the vessel. There was evidence that libelant was intoxicated at the time of the collision. Testimony for the defendant was in no way discredited, except by the contradictory testimony of libelant. Held that, it being very clear from the evidence that the fault of the steamer, if any there was, was slight compared with that of the libelant, a decree should be rendered in favor of the defendant.

4. SAME—DIVISION OF DAMAGES.
The rule in admiralty does not admit of the apportionment of damages for collision to correspond with the respective degrees of negligence of the two vessels; but, if divided, it must be equally, and, where the fault

rests chiefly with the vessel of libelant, he will not be entitled to recover because there may have been slight negligence on the part of the other vessel.

**In** Admiralty. Suit for collision.

T. J. Geisler and Geo. W. Hazen, for libelants.
F. P. Mays, for defendant.

BELLINGER, District Judge. The material testimony in the case is brief. Jacobsen, in his own behalf, gives the following account of the accident: He says, after leaving Mosier Beach, on the Oregon side, "I tacked over, and I was standing over on the Washington side; and my boy says, 'There is a steamer coming.' I says, 'We go over on the Washington side.' That is what I told the boy. I says: 'She can either go behind us or in front of us. If she want to go in front of us, maybe she will blow the whistle. I don't think there is any danger. We will keep our course, and go right over the river. She can go right behind us.'" He continues: "So I saw the boat coming to us right up the river, right just against us all the time in looking at the boat, holding the tiller in one hand and the sheet in one hand, and pulled the tiller and sheet, and pulled it up and down. And I saw them coming about 100 feet or so down below me. I saw them coming so close to me. I saw there was no show to get out. So I took my hat, and threw three times to him, and I hallooed to go behind me. Just when I took the hat, and turned to look at the steamboat, and there wasn't a soul to be seen on that boat. The doors was closed. As soon as I done that, I saw she come so quick on me, I told this boy and the other gentleman to jump. But, coming up, it hit me right alongside of the centerboard, right square in the middle, and capsized me right over." Jacobsen testifies that he did not change his course prior to the collision. Forde, who was with Jacobsen in the boat, testifies substantially to the same effect. Jack Coover was in a sailboat, one-half mile distant, and saw the accident. He corroborates Jacobsen as to the course of the two boats. He testifies that the steamboat came "and turned for Jacobsen; turned right towards him. Q. Turned to the left, towards the Washington shore? A. Yes." This is all the testimony there is on the libelants' behalf as to the course of the two boats up to the time of the collision. Nelson, who was at the wheel of the steamer when the accident occurred, testifies that he first saw the sailboat on Mosier Beach; that from there she started down and across the river, tacking down; that, if the sailboat had kept its course, it would have passed behind the steamer, but that, when about 500 or 600 feet distant, she changed her course, and ran pretty much upstream,—the same direction the steamer was going,—but a little towards the Washington shore; and when about 100 or 150 feet distant the sailboat again changed its course across the steamer's bow, whereupon Nelson ported the steamer's wheel, and stopped and backed her. Nelson further says that when the sailboat turned upstream she ran about 75 feet before she turned across the steamer's bow. This distance is approximated by the witness on cross-examination. "Q. Then, how many feet did

he run in that course before he changed, as you said? A. Well, I could not just say how many feet it would be. Q. About how many? A. Well, just a short distance. Q. About fifty feet? A. Well, it may be a little more than that. Q. 75, probably? A. Yes, somewheres there." Norwood, who was assistant engineer on the steamer, testifies that when he first saw the sailboat she was 100 or 150 feet to starboard of the steamer, and about 150 yards ahead, headed on about the same course the steamer was on; that he remarked to one of the cabin boys, "There is a race;" that this course was continued something like three or four minutes; and, when the steamer had got within 150 or 200 feet of the boat, the latter changed her course all of a sudden to cross the steamer's bow. J. R. Scott, who was at the time in the employment of the steamboat company, but is now dining-car commissary on the Southern Pacific Railroad, testifies that he was standing with Norwood in one of the gangway doors, when he saw the sailboat "going a little bit ahead" of the steamer in the same direction; that Norwood said, "There is a hot race," or words to that effect, and witness answered, "Yes." "Q. You may state whether or not the sailboat afterwards changed her course. A. After we got up, oh, I guess—I don't know how far it was, but got up quite a little way,—why, it sort of come across like this, tried to cross the bow." The witness testifies that he said to Norwood, "That boat will run into us sure," and both hallooed, but that it did not seem to do any good. Both Scott and Norwood testify that Forde, after the accident, said to a lot of them standing around, that he warned the old man to look out, not to cross the bow; that it was the old man's fault. Forde denies having made these statements. Hayes testifies that a few days after the collision he heard Forde talking in Lou Morris' store at White Salmon, where there were six or seven men present; that Forde said he tried to persuade Jacobsen not to cross the bow of the Dixon, and Jacobsen said he was a sailor man; he could cross the bow. Lou Morris was one of the men present.

It is material to determine which of these conflicting accounts as to the course of the sailboat immediately prior to the accident is true. If it is a fact that the sailboat, shortly prior to the accident, changed her course so as to run in the same general direction with the course the steamer was on, then the contention of libelants, based upon the laws of navigation, has no application; nor, indeed, can such argument have application if the state of the testimony is such that the court cannot say which of these accounts is the true one, nor determine whether the sailboat did change its course or not, as claimed. It is argued for the libelants, from the testimony of Nelson, the pilot in charge of the steamer, that the relative position of the two vessels could not have been as claimed by respondent; that the relative speed of the two vessels and their courses and distances, as testified to by Nelson, would have made the collision impossible; and that the like facts as testified to by the engineer of the steamer, although his testimony differed from that of Nelson as to estimated distances and the time during which the sailboat kept the steamer's course, would make the collision equally

impossible; and that the court must, therefore, reject their testimony, and accept the account given by Jacobsen and Forde as the true version of what occurred. But in weighing evidence the court must distinguish between obvious and conjectural facts. The course of the sailboat with reference to the steamer, whether she was going up or down or across the river, is a fact patent to those who were in a position to see. Her speed may be judged approximately, but the distance of one vessel from another at a given moment, or the distance which is traversed on a given course, or the time occupied in traveling on such a course, is a matter of opinion, as to which probably no two witnesses out of any number will agree. Such matters cannot be known. There is no substantial basis upon which the judgment can act. It is mere guesswork, and, in the nature of the case, must be so treated. The fact that a witness guesses wide of the mark may tend to impeach his judgment, but not his veracity. The court is not warranted in rejecting the testimony of Nelson or that of the engineer as to the facts within their knowledge merely because their estimates of time and distance and speed are inconsistent and unreliable. An erroneous judgment as to the speed at which either craft was going, or as to the distance which separated them at a given time, or as to the distance or length of time the sailboat traveled upstream, if it did travel upstream, before changing its course across the steamer's bow, if it did such a thing, would involve all the difficulties attributed to the testimony of Nelson in respect to these matters. The engineer of the steamer testified that the sailboat, immediately before the collision, was on practically the same course that the steamer was on for some three or four minutes; while Nelson, when pressed with leading questions upon cross-examination, says that the sailboat so continued for a distance of about 75 feet. Now, if the steamer was going at a speed of 15 miles per hour, she would travel, instead of 75 feet, as testified by Nelson, 3,960 feet, according to the engineer. No one, in such circumstances, can give a reliable estimate in respect to a matter of this kind. But it does not follow that these witnesses are not to be believed when testifying to facts about which they know. They know whether the sailboat did, in fact, change its course, and run on the steamer's course for a time immediately preceding the collision; and they affirm that she did so. And Scott, who is not connected with the company, and has no apparent interest in the matter, testifies to the same thing. There is nothing to discredit these witnesses, aside from the contradiction of Jacobsen and Forde; and, as I have already stated, I do not feel warranted in finding against their testimony and in favor of that of the two men in the sailboat, even if there was nothing in the case to affect their testimony (that is, the testimony of Jacobsen and Forde). Jacobsen's interest is greater than that of any other person connected with the transaction. He has the pecuniary interest of a party, and he has the far greater interest of exonerating himself from responsibility for the death of his wife's son, which resulted from the accident. That Jacobsen was more or less under the influence of whisky is established beyond question. He does not deny that his wife upbraided him for the ac-

cident, and attributed it to his drinking, and that he made no denial to her of the conduct she attributed to him. Forde is impeached by both Hayes and those upon the boat who testified to statements made by him after the occurrence. The proof of the statements which he made involves, not only his contradiction as a witness, but his explanation as to how the accident occurred. He stated in the presence of a number of persons, both on the boat and in the store of Lou Morris at White Salmon, that he tried to persuade Jacobsen not to cross the steamer's bow. If he made that statement,—as this testimony shows he did,—then he is discredited as a witness, because he denies having done so; and, if the statement was true (as I assume it was, having been made so soon after the occurrence as to constitute a part of the res gestæ), then it shows that the danger to the sailboat was apparent before the accident, and that the accident might probably have been avoided had it not been for the obstinacy of Jacobsen in pursuing a course that involved obvious peril. Nor is the case affected by the allegation in the answer that the sailboat was some 100 feet off the steamer's starboard bow when it changed its course. It is argued that this fixes absolutely the position of the two crafts at the time mentioned, and that no theory of the case that does not square with this fact can be admitted. The allegation was of a merely probative fact, and what has already been said in respect to the testimony of Nelson and the engineer, testifying as to distances and speed of travel, applies equally to this allegation. The allegation is not of an ultimate fact in any way decisive of the case, nor does the statement purport to be an unqualified one; it is a mere conjecture of the distance the sailboat was from the steamer at the time she changed her course,—she was some 100 feet. It purports to be nothing more than a mere estimate or conjecture on the part of the pleader, and is of the same character as the other testimony referred to, and is to be given the same consideration.

I have had some hesitation in the decision of this case because I have been impressed with the belief that the steamer might have avoided this injury by the exercise of the greatest care. I have hesitated to adopt a rule that may warrant other steamers in like circumstances in depending upon the responsibility of smaller craft to keep out of the way. While it is the duty of such craft, being more easily handled, and traveling upon less fixed courses than larger ones, to avoid the risk of collision, yet it is also the duty of the larger vessels to be equally diligent for the safety of those navigating in their vicinity. But, looking at this transaction in a light as favorable to the libelants as the testimony can possibly warrant, it is very clear that the fault of the steamer, if fault there was, was slight compared with that of Jacobsen. The rule in admiralty does not admit of such an apportionment of damages that have resulted between two crafts as would correspond to the negligence of the two respectively. At most the court could only divide the damages between the two; in other words, make such an apportionment of damages as assumes that the steamboat was equally responsible with the sailboat for what occurred.